[Cite as *Hadjuk v. Rusnak*, 2024-Ohio-339.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JEANNETTE P. HADJUK, ET AL.,　　　　:

　　　Plaintiffs-Appellees,　　　　:

　　　　　　　　　　　　　　　　　　No. 112573

　　　v.　　　　:

DONNA RUSNAK, ET AL.,　　　　:

　　　Defendants-Appellants.　　　　:

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 1, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2021 ADV262261

---

### *Appearances:*

Paul Knott, *for appellees.*

Weston Hurd LLP, Scott J. Robinson, and Paul M. Shipp,
*for appellant.*

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant, Donna Rusnak, appeals the trial court's judgment, rendered after a declaratory judgment hearing, finding in favor of plaintiffs-appellees Jeannette Hadjuk and Diane Dudash (collectively "Hadjuk") in a dispute over their father's, John McConihay, estate. Rusnak argues that Cuyahoga County Probate Court does not have jurisdiction over the case and the court abused its discretion when it prevented her from cross-examining witnesses, making a closing argument, or reviewing exhibits. Rusnak also appeals the court's denial of her motion for relief from judgment. For the reasons that follow, we affirm.

{¶ 2} In 2017, McConihay suffered a fall and was hospitalized. He was subsequently released to East Park Care Center for rehabilitation. McConihay had a history of strokes but was able to live independently with his wife of nine years, Roxana, until that time. Around the same time, Roxana suffered from dementia and was placed in a separate facility. Roxana's family expressed their hope that McConihay and Roxanna could live together in a facility when McConihay was released from East Park. The family also sought contributions from McConihay for the care of his wife. After his release from East Park and until his death, McConihay lived with Rusnak and not his wife.

{¶ 3} According to Rusnak, soon after her father was hospitalized, he requested that she secure his financial papers and cash. Rusnak contacted an attorney to create a durable power of attorney and a healthcare power of attorney,

naming herself as the power of attorney. Both powers of attorney were executed while McConihay was still in the ICU.

{¶ 4} Rusnak contacted a second attorney to create an estate plan for McConihay. Rusnak used McConihay's assets to pay the attorney approximately $12,000 to create an estate plan. The estate plan included a will, a trust, and a care agreement that provided that Rusnak would be paid for serving as caregiver to her father. The plan also provided that the attorney would assist the family for a year in executing the trust.

{¶ 5} In January 2018, McConihay executed his will, which distributed his estate assets to his three daughters equally. McConihay also updated his powers of attorney, again naming Rusnak as power of attorney.

{¶ 6} McConihay was released from East Park in late January 2018 and went to live with Rusnak in her Lorain County home. According to Rusnak, her father was upset that he was no longer living with his wife, but Rusnak was concerned that Roxana's family would take advantage of her father. In her meetings with the estate attorney, Rusnak reported that her father's marriage was "shaky" due to problems with Roxana's family.

{¶ 7} On February 8, 2018, McConihay executed The John A. McConihay Irrevocable Assets Protection Trust ("Trust"); Rusnak was named the trustee. The Trust provided that McConihay's assets were to be distributed equally among his three daughters. The Trust also provided that McConihay was to have complete possession of all real property and it was to remain titled to him for his lifetime.

Pursuant to the terms of the Trust, all of McConihay's assets, with the exception of $80,000, were to be placed in the trust. The remaining funds were to be placed in an account that was payable on death to his three daughters.

{¶ 8} On March 22, 2018, the estate attorney sent a letter to Rusnak, in her capacity as trustee, instructing her on the next steps of the Trust, including the transfer of her father's West Virginia property and his Ford Advantage account to the Trust. The letter also set forth, in detail, Rusnak's duties as trustee, which included carrying out the terms of the Trust, rendering annual accountings, and maintaining separate bank accounts.

{¶ 9} On April 20, 2018, McConihay executed a transfer on death beneficiary designation that changed the beneficiary on his Great American Life Insurance annuity, worth approximately $180,000, from his wife to Rusnak. The same day, McConihay changed the beneficiary on his PNCI account, worth approximately $30,000, to Rusnak.

{¶ 10} Rusnak did not transfer the Ford Advantage Account into the Trust. Instead, between May 2018 and November 2019, Rusnak wrote checks totaling $175,000 from the account and deposited them in her personal bank account. According to Rusnak, McConihay spent part of the funds on "gambling and jewelry." Rusnak also paid her Bank of America credit card bill from the funds. Rusnak never provided an accounting, receipts, or further explanation as to how the money was used. At some point, Rusnak fired the estate attorney; she never sought assistance from the attorney regarding the Trust.

{¶ 11} Rusnak and McConihay opened a joint account at Huntington Bank into which they each deposited $5,000. The trial court found that Rusnak withdrew more from the account than her initial deposit and was unable to explain how the account was used or provide an accounting or receipts.

{¶ 12} In October 2018, Rusnak persuaded her father to pursue and file for a divorce from Roxanna, despite his desire to remain married.

{¶ 13} McConihay died on January 27, 2021. After McConihay's death, Rusnak filed an application to probate her father's will in Cuyahoga County Probate Court. Great American issued a check to Rusnak for approximately $178,000 for the death benefits, which she deposited into her personal bank account. The PNCI account was also deposited into Rusnak's personal bank account.

{¶ 14} In July 2021, Hadjuk filed a complaint for declaratory judgment and accounting in the Cuyahoga County Probate Court alleging Rusnak exerted undue influence over their father and breached her duties as trustee.[1] Hadjuk filed a motion to compel alleging that Rusnak was not forthcoming during the discovery process. The trial court granted the motion and ordered Rusnak to provide further information set forth in the discovery requests or face sanctions. Hadjuk subsequently filed a motion to show cause and for attorney fees.

{¶ 15} On March 4, 2022, Rusnak was removed as fiduciary of her father's estate; Hadjuk was appointed as successor fiduciary. Hadjuk moved to remove

---

[1] In September 2022, Hadjuk filed a complaint for concealment, which remains pending in the trial court. *See Hadjuk, et al. v. Rusnak*, Cuyahoga P.C. No. 2022ADV274096.

Rusnak as trustee of the Trust. The trial court held a hearing on the matter; Rusnak's attorney was present, but she failed to appear. The trial court removed Rusnak as trustee. On November 15, 2022, Rusnak's attorney filed a motion to withdraw from the case and Rusnak proceeded pro se. In January 2023, Hadjuk deposed Timothy Allen, M.D. Rusnak did not appear for the deposition, despite being notified of its date, time, and location.

{¶ 16} The trial court held a final hearing over two days in February 2023. Dr. Allen, a psychiatrist and expert on brain injury, testified and concluded that McConihay was dependent on Rusnak following his release from East Park because he could not ambulate or transfer independently, required supervision in all his daily activities, and suffered from intermittent confusion. Dr. Allen concluded that McConihay's physical and cognitive limitations and dependence on Rusnak rendered him susceptible to undue influence.

{¶ 17} In a judgment entry dated February 27, 2023, the court concluded there was overwhelming evidence of undue influence and made findings: (1) Dr. Allen and the two sisters' (Hadjuk and Dudash) testimony established that McConihay was susceptible to undue influence; (2) Rusnak had "ample opportunity to exert undue influence" because McConihay was dependent on Rusnak for his daily care and handling of his finances and Rusnak isolated him from his wife, brother, and other daughters and; (3) McConihay unwittingly transferred the bulk of his assets to Rusnak in contravention of his stated intention to divide his assets equally between his three daughters as a result of Rusnak's undue influence.

{¶ 18} The court found that Rusnak failed to account for any of the estate assets while fiduciary of McConihay's estate and concluded that Rusnak breached her duties as trustee and as power of attorney.

{¶ 19} The court ordered the transfer of $466,057.22 of estate assets from Rusnak to the estate. The court also granted Hadjuk's motion to show cause and ordered Rusnak to pay reasonable expenses, including attorney fees, caused by her failure to comply with discovery, in an amount to be determined at a later date.

{¶ 20} In March 2023, Rusnak filed a Civ.R. 60(B) motion for relief from judgment. She also filed a notice of appeal with this court. This court initially dismissed Rusnak's appeal for lack of a final, appealable order because the appeal was filed before the trial court ruled on the motion for relief from judgment.

{¶ 21} On July 12, 2023, the trial court entered a judgment entry stating that the attorney fee issue had been settled and Rusnak agreed to pay $15,000 in attorney fees and expenses. The court denied Rusnak's motion for relief from judgment.

{¶ 22} Rusnak moved to have her appeal reinstated, which this court granted. Rusnak filed an amended notice of appeal and Rusnak filed a supplemental brief relating to the trial court's denial of her motion for relief from judgment.

## I. Assignments of Error

> I. The trial court erred when it entered judgment in a case over which it had no subject-matter jurisdiction.
> II. The trial court erred when it did not permit Ms. Rusnak to fully cross-examine witnesses or review exhibits, while allowing plaintiffs' counsel to ignore the rules of evidence.

III.  The trial court erred when it denied Appellant's Civ.R. 60(B) motion for relief from judgment by finding that it had subject-matter jurisdiction.

## II.  Law and Analysis

### A. Subject-matter jurisdiction – first and third assigned errors

{¶ 23} In the first assignment of error, Rusnak argues that the Cuyahoga County Probate Court did not have jurisdiction over the case.  According to Rusnak, the complaint should have been filed in the Lorain County Probate Court because McConihay lived with her in Lorain County from the time he was released from East Park until his death, and not at his Olmsted Falls home in Cuyahoga County.  In her third assignment of error, which was part of Rusnak's supplemental brief on appeal, she argues that the trial court erred in denying her motion for relief judgment on the same grounds.  We combine these assignments of error because Rusnak sets forth the same argument on both issues.

{¶ 24} "Subject-matter jurisdiction is a court's power to hear and decide a particular class of cases." *McKitrick v. Larose*, 2022-Ohio-3800, 199 N.E.3d 677, ¶ 7 (10th Dist.), citing *Fifth Third Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 19.  A court cannot hear and decide a case without subject-matter jurisdiction; therefore, "the issue cannot be waived and may be raised at any time by the parties or a reviewing court."  *Id.*, citing *State ex rel. Bond v. Velotta Co.*, 91 Ohio St.3d 418, 419, 746 N.E.2d 1071 (2001).  "'When determining whether a court has subject-matter jurisdiction, a court does not determine which forum should hear and decide the case[.]'"  *DeSantis v. Estate of*

*DeSantis*, 7th Dist. Mahoning No. 21 MA 0104, 2023-Ohio-519, ¶ 14, quoting *Fifth Third Bank N.A. v. Maple Leaf Expansion, Inc.*, 188 Ohio App.3d 27, 2010-Ohio-1537, 934 N.E.2d 366, ¶ 15 (7th Dist.), citing *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11.

{¶ 25} R.C. 2107.11 provides that a person's will shall be admitted to probate in the county in which the person was domiciled at the time of his or her death. Rusnak filed her father's will in Cuyahoga County Probate Court. Hadjuk subsequently filed an action for declaratory judgment in the same court. "'The probate court is a court of limited jurisdiction and thus cannot exercise authority other than that specifically granted by statute or the constitution.'" *DeSantis* at ¶ 15, quoting *Estate of Dombroski v. Dombroski*, 7th Dist. Harrison No. 14 HA 3, 2014-Ohio-5827, ¶ 12. R.C. 2101.24 (c), (l), and (u) provide that the probate court has exclusive jurisdiction to direct and control the conduct of fiduciaries and settle their account, render declaratory judgment, and to hear and determine actions relating to durable powers of attorney for health care. Thus, the probate court has jurisdiction over this action.

{¶ 26} A person may have more than one place to live, but he or she may only have one domicile. *E. Cleveland v. Landingham*, 97 Ohio App.3d 385, 393, 646 N.E.2d 897 (8th Dist.1994). A "domicile" is a place where a person lives or has his or her home; a place where an individual has established his or her true, fixed, permanent home and principal residence; or a place to which the individual intends

to return whenever he or she is absent and from which he or she has no present intent to move. *Id.* at 389.

{¶ 27} For a change in domicile to be established, the person in question must have a physical presence in the new residence and intent to stay there. *Cunningham v. Testa*, 144 Ohio St.3d 40, 2015-Ohio-2744, 40 N.E.3d 1096, ¶ 13, citing *Schill v. Cincinnati Ins. Co.,* 141 Ohio St.3d 382, 2014-Ohio-4527, 24 N.E.3d 1138. To determine a person's intent, the court must draw its own conclusions from all the facts and circumstances of each case in determining a person's intent to change domicile. *Landingham* at 392.

{¶ 28} The evidence that McConihay was domiciled in Cuyahoga County is overwhelming. McConihay went to live with Rusnak, in Lorain County in January 2018 after his release from East Park. The care agreement between Rusnak and McConihay lists Rusnak's property as a "Facility." In October 2018, McConihay filed for divorce in Cuyahoga County Domestic Relations Court. He listed his Olmsted Falls address in Cuyahoga County and averred he had been a resident of the county for more than "six months and ninety days." McConihay's tax returns for years 2017, 2018, and 2019 list his home address in Cuyahoga County. McConihay's PNCI, Great American Insurance, and Ford Advantage accounts list his Olmsted Falls address and statements from the accounts were mailed to that address. The change of beneficiary designations, which are the subject of this action, were executed in April 2018, after McConihay went to live with Rusnak, and list his address is in Olmsted Falls, Cuyahoga County.

{¶ 29} In April 2020, McConihay and Rusnak opened a joint account at Huntington National Bank that remained open until McConihay's death. McConihay was listed as the primary owner of the account and the account listed his address in Cuyahoga County. McConihay's driver's license and his medical records, including records from the day before he died, list his Olmsted Falls address. McConihay never changed his address or forwarded his mail. Rusnak testified that she took her dad to his Olmsted Falls home two to three times a week to pick up his mail.

{¶ 30} Rusnak claims that because McConihay conveyed his Olmsted Falls property to the Trust, he no longer intended on being domiciled in Cuyahoga County. The plain language of the Trust belies that claim. The Trust states that McConihay was to have complete possession over his property and was entitled to remain in the property for his lifetime.

{¶ 31} Perhaps most compelling is that Rusnak filed the application to probate her father's will in Cuyahoga County, averring that he was a resident of Cuyahoga County until his death. *See* R.C. 2107.11 (A will shall be admitted to probate in the county in the state in which the deceased person was domiciled at the time of their death). McConihay's death certificate listed his address in Cuyahoga County, based on information Rusnak provided to the medical examiner.

{¶ 32} The evidence in this case, even that which Rusnak cites in her favor, shows that McConihay was domiciled in Cuyahoga County until his death.

Therefore, the trial court did not err in finding that it had subject-matter jurisdiction over the case.

{¶ 33} Rusnak also argues that the trial court abused its discretion in denying her motion for relief from judgment.

{¶ 34} Civ.R. 60(B) provides:

> [T]he court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud ***, misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment.

{¶ 35} The decision to grant or deny a motion for relief from judgment is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Estate of Mallory*, 11th Dist. Trumbull No. 2005-T-0028, 2006-Ohio-1265, ¶ 9, citing *Griffey v. Rajan*, 33 Ohio St.3d 75, 514 N.E.2d 1122 (1987). An abuse of discretion "'involves more than a difference in opinion * * * [A] trial court's judgment that is "profoundly and wholly violative of fact and reason" constitutes an abuse of discretion.'" *State v. Price*, 8th Dist. Cuyahoga No. 111921, 2023-Ohio-3790, ¶ 32, quoting *State v. Weaver*, 171 Ohio St.3d 429, 2022-Ohio-4371, 218 N.E.3d 806, ¶ 24.

{¶ 36} Rusnak argues that the trial court abused its discretion and should have granted her Civ.R. 60(B) motion for the same reasons she has previously

expressed: the probate court did not have subject-matter jurisdiction over the case. Having already found that the probate court had jurisdiction over the claims against Rusnak, we find no abuse of discretion in the court's denial of her motion for relief from judgment.

{¶ 37} The first and third assignments of error are overruled.

**B. Trial court proceedings – second assignment of error**

{¶ 38} A trial court has broad discretion to control the proceedings to enable it to exercise its jurisdiction in an orderly and efficient manner. *Regalbuto v. Regalbuto*, 8th Dist. Cuyahoga No. 99604, 2013-Ohio-5031, ¶ 13. The court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Evid.R. 611(A).

{¶ 39} In the second assignment of error, Rusnak claims that the trial court abused its discretion when it did not allow her to make a closing argument, review exhibits, or cross-examine witnesses.

{¶ 40} Rusnak elected to represent herself at the hearing. Pro se litigants are bound by the same rules and procedures as those who retain counsel; pro se litigants are not to be accorded greater rights and must accept the results of their own mistakes and errors. *See McLemore v. Clinton Cty. Sheriff's Office*, 2023-Ohio-1604, 214 N.E.3d 723, ¶ 41 (12th Dist.).

{¶ 41} Rusnak's failure to object at the hearing or to claim plain error on appeal limits our review. In appeals of civil cases, the plain-error doctrine is not favored and "may be applied only in extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *State v. Bouyer*, 8th Dist. Cuyahoga No. 112045, 2023-Ohio-4793, ¶ 62, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997). But even if Rusnak had properly objected, we would find no abuse of discretion.

{¶ 42} Rusnak argues that (1) she was not allowed to fully cross-examine witnesses, (2) present a closing statement, or (3) or review each of the 29 exhibits before they were admitted into evidence.

{¶ 43} Evid.R. 611(B) states "[c]ross-examination shall be permitted on all relevant matters and matters affecting credibility." "'The limitation of * * * cross-examination lies within the sound discretion of the trial court, viewed in relation to the particular facts of the case. Such exercise of discretion will not be disturbed absent a clear showing of an abuse of discretion.'" *Mueller v. Lindes*, 8th Dist. Cuyahoga No. 80522, 2002-Ohio-5465, ¶ 24, quoting *State v. Treesh*, 90 Ohio St.3d 460, 739 N.E.2d 749 (2001). Trial judges may impose reasonable limits on cross-examination to prevent harassment, prejudice, confusion of the issues, repetitive testimony, marginally relevant interrogation, or to protect a witness's

safety. *La Spisa v. La Spisa*, 8th Dist. Cuyahoga No. 111810, 2023-Ohio-3467, ¶ 135, citing *Mueller v. Lindes*, 8th Dist. Cuyahoga No. 80522, 2002-Ohio-5465.

{¶ 44} Rusnak uses the following examples to explain how she was prevented from cross-examining witnesses:

> Rusnak: So, you only seen [sic] your dad on Saturdays, and I wouldn't allow you to see him any other time?
>
> Hadjuk: I tried to change the days, and you wouldn't allow it.
>
> Rusnak:  That's not true.
>
> Court: You're not here to argue. You're just asking questions. It's just a followup of everything you already heard.
>
> * * *
>
> Rusnak: And you put names on items in dad's house?
>
> Hadjuk:  Yes. * * * I wanted some of that Fenton because dad wanted me to have that, and I didn't get anything.
>
> Rusnak: You did get something.
>
> Hadjuk: What did I get?
>
> Rusnak: You got cookbooks. You took –
>
> Hadjuk:  No.  I didn't get cookbooks.
>
> Court: All right. You can ask questions.
>
> Rusnak:  All right.  I'm done.

(Tr. 204-206).

{¶ 45} These two examples illustrate that the trial court prevented Rusnak from arguing with the witness and asking repetitive questions.

{¶ 46} Rusnak also complains that the trial court prevented her from cross-examining Dr. Allen, Hadjuk's expert witness. Rusnak did not attend Dr. Allen's deposition, despite being notified several times about the time and place of the deposition. Dr. Allen did not testify in person; his videotaped deposition was played for the court. If Rusnak wanted Dr. Allen to testify in person and be subject to cross-examination, she could have subpoenaed him.

{¶ 47} Next, Rusnak argues that the trial court abused its discretion when it did not allow her to make a closing statement; we disagree. Again, a trial court has broad discretion to control its proceedings, including opening and closing statements. *See Untied v. J. J. Detweiler Ents.*, 5th Dist. Coshocton No. 07CA0003, 2008-Ohio-838 (We review a trial court's decision to limit closing arguments for an abuse of discretion.). After Hadjuk finished her closing statement, the trial court inquired whether Rusnak would make a closing statement. In response, Rusnak stated that she did not understand the accusations against her, "because I was never concealing anything from anyone." She then proceeded to talk about her storage unit and claim that an auctioneer stole items from her; arguments that had not been previously discussed at trial. Rusnak and the court had a brief conversation on the record about Rusnak's latest claims. Rusnak then asked for time "to get her thoughts together," and the trial court stated that it did not want to rehash what had already been testified to and ended the hearing.

{¶ 48} Although the trial court could have allowed Rusnak to proceed with further argument, it was within the court's discretion to limit the argument. The

court may have considered that Rusnak was making brand new claims that did not include a summation of her case.

{¶ 49} Finally, Rusnak claims that it was incumbent on the trial court to review each of the 29 items that Hadjuk offered into evidence.

{¶ 50} Counsel for Hadjuk stated on the record that he provided all the exhibits "well in advance of trial" via email and "had them overnighted to her last week as well just so there was no issue with respect to making sure she had available all exhibits prior to today." Counsel also stated that they could go through them individually but the trial court declined. Again, no objection was made.

{¶ 51} Rusnak has not shown that the trial court committed any error, let alone plain error, in the way the court conducted the hearing.

{¶ 52} The second assignment of error is overruled.

{¶ 53} The trial court had subject-matter jurisdiction over the case, and there was no abuse of discretion in how the trial court conducted the hearing. The trial court did not abuse its discretion in denying Rusnak's motion for relief from judgment.

{¶ 54} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

MARY EILEEN KILBANE, P.J., and
SEAN C. GALLAGHER, J., CONCUR